32332. BROWN-ROGERS-DIXSON COMPANY INC *v.* SOUTHERN RAILWAY COMPANY.

Decided May 21, 1949. Rehearing denied June 16, 1949.

*Dunaway, Riley & Howard, Yantis Mitchell, H. Fred Gober,* for plaintiff.

*Edgar A. Neely Jr., Neely, Marshall & Greene,* for defendant.

GARDNER, J. Brown-Rogers-Dixson Company Inc., brought suit in the Civil Court of Fulton County against the Southern Railway Company, seeking to recover damages for injury to a shipment of milk and cream consigned to the plaintiff in Atlanta, from Waconia, Minnesota, and delivered to the plaintiff by the defendant as terminal and connecting carrier. It was set up that the milk and cream had soured and was spoiled when it was delivered by the defendant to it, and that had the same been promptly delivered to the plaintiff it would not have been spoiled and the plaintiff not damaged. It was set out that three or four days was the usual and proper time for such delivery to have been made and that it was six days before this shipment was delivered to the plaintiff by the defendant; that same was properly packed and iced when shipped; that the tariff paid for the shipment was based on shipment in baggage service, but that the same was shipped by freight train, and that the plaintiff endeavored to locate the shipment in the defendant's possession in Atlanta, but failed and that the shipment was in Atlanta two or more days before delivery, and that the defendant was negligent in the handling of the car in Atlanta. The defendant railway contended that it tried to deliver the car of cream and milk on March 31, which was Saturday, but that the plaintiff's agent requested that the company hold the car until Monday, April 2, and that if the shipment was spoiled it was through the fault of the plaintiff or the consignor in not properly icing and packing the cream and milk. The case was submitted to a jury and a verdict returned in favor of the defendant. The plaintiff moved for a new trial on the general grounds and by amendment added certain special grounds. The trial court denied the motion for a new trial, as amended, and to this judgment the plaintiff excepted.

1. There was no error in excluding the testimony of a certain witness for the plaintiff on direct examination as to whether there had been a case, during the time the witness was in the employ of the Waconia Creamery Association, the shipper of the milk and cream in question, "where there was not sufficient ice" packed around a shipment of milk. Such testimony would have been a conclusion without sufficient facts on which to base the same. See the Code, § 38-1708. Moreover, such testimony would not show that this particular car was properly packed with

sufficient·ice. The plaintiff could, in a proper manner, show that it was the usual custom of the consignor to place so much ice in the cars of milk and cream, of the type of the car in which the shipment involved was made, and to pack same in a proper manner, and that so much ice was required from that point to Atlanta or for so many days in transit, and that it was the customary thing for the consignors to pack cars of milk and cream for a journey of so many days with so much ice.

2. The court excluded the testimony of a witness for the plaintiff that seven tons of ice went into the car containing this shipment. The testimony of this witness as a whole discloses that he had no actual knowledge as to whether this much or how much ice went into this car and as to whether the same was properly packed. The exclusion of this testimony does not require a new trial. Testimony as to what would be sufficient ice for a shipment of milk and cream from Minnesota to Atlanta, and how the same should be properly packed to prevent spoilage where on the road the proper time, and whether this car had been so treated, would be proper, where such testimony is given by one qualified so to testify.

3. Whether or not the manager of the shipper had, since his connection with the shipper, ever received any complaint about spoilage of milk or cream due to under-icing of any of the cars shipped, with the exception of the car involved here, was too general to be material and relevant and to illustrate whether or not the car in question had been properly iced. The court did not err in excluding same.

4. The court did not err in refusing to exclude the testimony of the defendant's yard conductor that he had made an effort to deliver this car of milk on Saturday before it was actually delivered, and received, by the plaintiff on Monday, and that he contacted the shipping clerk of the plaintiff and the car was carried to the plaintiff's place of business and "they would not take it." This evidence was properly admitted although the defendant's conductor used the memorandum in the nature of a yard conductor's car record which he had made as to the movement and placement of cars of freight for the period of time in order to so testify. A witness may use a memorandum made by him in order to so testify. A witness may use a memorandum made

by him in order to refresh his memory and may testify therefrom. The witness swore positively as to the facts on the record so kept by him. See the Code, § 38-1707.

5. The court did not err in admitting in evidence the memorandum, referred to in the foregoing paragraph, and on which was marked an "x" after the notation thereof as to the car containing this shipment of milk and cream, the witness making this memorandum having testified that he made this "x" after the car number containing the number of this car of milk and cream, and this showed the movement thereof. The witness swore positively that the record made by him was correct. See *Williamson* v. *Walker*, 187 *Ga.* 603 (1 S. E. 2d, 718).

6. Error is assigned upon the following excerpt from the charge of the court: "The burden is further upon the plaintiff to show any loss or damage that it may have sustained by reason of the negligence of any of these carriers or railroad companies over whose lines the car moved, either through delay or for any other reason." It is contended that this charge put a greater burden of proof upon the plaintiff than the law places upon it. It is the law under the record of this case that the burden was on the plaintiff to prove that the goods were delivered to the initial carrier in good order and that they were delivered by the terminal carrier in bad order, to the damage of the consignee. See Atlantic Coast Line R. Co. *v.* Ga. Packing Co., 164 Fed. 2d, 1. When and if the plaintiff proved these things, the law then shifts the burden to the defendant carrier to show that the damage to the goods, if any, was not caused by its negligence, nor was it caused by the negligence of the initial or any connecting carrier. The plaintiff contends that the excerpt of which complaint is made put the burden on the plaintiff of showing that the carrier companies over whose lines the car moved, were not negligent. If this construction of counsel for the plaintiff is correct, the case should be reversed. Otherwise not. We have read and studied very carefully the pleadings in the case, the evidence, the charge of the court as a whole, in view of this assignment of error (as well as all assignments of error). Our first impression was that this assignment of error was meritorious. But upon further consideration, in view of the pleadings and the evidence, and the entire charge of the court, we do not think it is erroneous. We

do not think, in view of the entire charge of the court, the evidence, and the law applicable, that the jury could have gotten the impression that the court intended to instruct them that such a greater burden was to be required of the plaintiff. It would seem that a proper construction of the excerpt, in the light of the pleadings, the evidence, and the whole charge, was simply to say that the burden was on the plaintiff to show that the goods were delivered to the initial carrier in good order and delivered in bad order by the terminal carrier and loss or damage resulted to the consignee. When the plaintiff showed this, the presumption arose that some one of the carriers involved did not exercise proper care. The defendant could rebut this presumption by proof that when the goods were delivered to the initial carrier they were not in good order, or that the damage was occasioned by the contributing negligence of the plaintiff.

7. The court did not err in charging the jury, as complained of in the 10th, 11th, and 12th special grounds, to the effect that the carrier was bound only to the exercise of ordinary care as to this shipment of milk and cream. By the contract under which this shipment of milk and cream was made (see division 6 hereof) the carrier undertook to become liable to the plaintiff where the milk and cream shipped was soured if it was negligent in the handling thereof. A carrier in a proper case may limit its liability. See the Code, § 18-103. A special contract between a railroad company and the shipper as to the liability of the company for the loss of goods shipped will, if legal and reasonable, be enforced. *Central R. & Bkg. Co.* v. *Anderson,* 58 *Ga.* 394. The defendant was not under the contract an insurer that this milk would not spoil and sour en route, but was only bound to exercise ordinary diligence in regard thereto. It was not required to exercise extraordinary care and diligence to prevent this car of cream and milk from spoiling.

8. It is contended that the court committed reversible error in charging the jury as follows: "I instruct you that one whose negligence directly contributes to his injury can not recover damages from another whose negligence substantially contributes to cause it, and that would be true even though the carelessness of the latter was the more proximate or the more effective cause of it." The plaintiff in error contends that the principle of law

did not apply in the instant case and was erroneous and requires a reversal. The reasons given by the plaintiff in error are: "It not only stated a principle of law not applicable to bailments and carriers, but stated a principle of law which is not followed or applied or recognized in Georgia, namely, the so-called strict contributory negligence rule, and it was harmful and hurtful to the movant because it imposed upon the defendant and its connecting carriers a lesser liability in the eyes of the jury than the law actually imposed, and it was calculated to lead the jury to believe that if they believed that the movant, had been guilty of any negligence whatever which contributed to the damage, that it could not recover in any amount from the defendant, regardless of any negligence of which the defendant and its connecting carriers were guilty." The suit here involved an interstate shipment. The assignments of error on this charge except to it because the principle of law which the court charged is not the law of Georgia. The laws of Georgia as to rights and liabilities of parties apply only to intrastate shipments and not to an interstate shipment, as here involved. In matters of substance, Georgia law has nothing to do with the Carmack Amendment under authority of which this action was instituted. In Cincinnati N. O. & T. R. R. Company v. Rankin, 241 U. S. 319 (36 Sup. Ct. 555, 60 L.ed. 1022, L. R. A. 1917A, 265), it was said: "The shipment being interstate, rights and liabilities of the parties depend upon acts of Congress, the bill of lading, and common-law rules as accepted and applied in Federal tribunals." As illustrative of this principle, see White v. Southern Railway Company, 208 S. C. 168 (38 S. E. 2d, 111, 165 A. L. R. 988), the first two headnotes of which are as follows:

"Federal legislation relating to liability of carriers for loss of and damage to goods moving in interstate commerce is supreme and supersedes all State laws which formerly governed the matter. Interstate Commerce Act, § 20 (11), 49 U. S. C. A. § 20 (11).

"The rights and liabilities of parties to an interstate shipment depend upon acts of Congress, bill of lading and common-law rules as applied and accepted in Federal tribunals."

See also Railway Express Agency Inc. v. Marchant Calculating Machine Company (D. C.), 52 Atl. 2d, 277, wherein that court said: "The purpose of the Carmack Amendment was to achieve

uniform liability for loss of or damage to goods transported in interstate commerce. Interstate Commerce Act, § 20 (11) as amended 49 U. S. C. A. § 20, (11).

"Under the Carmack Amendment, interstate carrier's liability is controlled by acts of Congress, the contract of carriage and common-law principles enforced in Federal courts. Interstate Commerce Act, § 20 (11), as amended, 49 U. S. C. A. § 20 (11)."

In the case of Atchison, Topeka &c. Railway Company v. Merchants' Live Stock Company, 293 Fed. 987, that court said: "One whose negligence directly contributes to his injury can not recover damages from another whose negligence substantially contributes to cause it, even though the carelessness of the latter was the more proximate or the more effective cause of it, and an instruction in action against carrier of livestock, which permits an apportionment of damages in such case, is erroneous." Therefore, this assignment of error is without merit.

9. The court did not err in charging the jury that "The rate charged, directed and required of the company to transport it (this car of milk and cream) with the same swiftness, I will say for want of a better word, as would amount to baggage car service, and that there being as I told you a while ago, no dispute that the car came in on a freight train, I instruct you now, unequivocally that that, in itself, was not a breach of the defendant's contract with the plaintiff and was not negligence in the premises." The contract under which this milk was shipped provided that the "carriers reserve the right to restrict shipments covered by this tariff to trains designated by them," and it was not negligence in itself and as a matter of law for the defendant to ship the same via freight train and not by passenger service. The carrier had the right, under this contract, to designate whether this car of cream and milk should be transported via freight or otherwise. Its duty was to use ordinary care in transporting the car and if it did so, there would be no liability, regardless of whether shipped by baggage service or freight.

10. The evidence did not demand a verdict for the plaintiff. The court did not err in overruling the motion for a new trial for any of the reasons assigned.

*Judgment affirmed. MacIntyre, P. J. and Townsend, J., concur.*