## 57476. GRAHAM BROTHERS CONSTRUCTION COMPANY, INC. v. SEABOARD COAST LINE RAILROAD COMPANY.

UNDERWOOD, Judge.

Graham Brothers Construction Company, Inc. ("shipper") appeals from a judgment in favor of Seaboard Coast Line Railroad Company ("railroad") for freight charges for shipment of a backhoe and from the grant of the railroad's motion for summary judgment as to the shipper's counterclaim for damages resulting from late delivery.

The facts are undisputed. On May 7, 1973, the railroad entered into a contract with the shipper to transport a Poclain backhoe from Dublin, Georgia to Bainbridge, Georgia and issued a bill of lading. The backhoe was to be delivered to Bainbridge in four days, but was not delivered within that time. Freight charges for the shipment totaled $937.76. When the railroad sued the shipper to collect the freight charges, the shipper

counterclaimed for $5,200 contending that this was its monetary loss as a result of working time lost due to the delay in shipment of the backhoe. The railroad filed affidavits and moved for summary judgment which was denied. The railroad then propounded interrogatories to the shipper which were answered and after this expansion of the record, the railroad again moved for summary judgment. The trial court found that the shipper had not complied with the requirement of the railroad's bill of lading that a written claim for loss or damage must be filed by a shipper with the railroad within nine months after delivery of the freight in question. Upon making this finding of fact, the court entered judgment for the railroad for the amount of the freight charges and granted the railroad's motion to dismiss the counterclaim. We affirm.

1. In *Outlaw v. Transit Homes, Inc.,* 145 Ga. App. 695, 697 (244 SE2d 633) (1978) we recognized the applicable federal law which defines the scope of liability of interstate common carriers to holders of bills of lading. "Transactions involving the interstate transfer of property by a common carrier are controlled by the Carmack Amendment to the Interstate Commerce Act, 49 USCA § 20 (11). This Amendment requires a carrier to issue a bill of lading for properties received for transportation in interstate commerce and permits the carrier to require that all claims against it be filed within a specified period, as long as that period is at least nine months." The Georgia Public Service Commission has adopted Uniform Freight Classification 13, ICC 9, July 11, 1978 as the tariff to be followed on intrastate shipments by railroad common carriers in Georgia. Included in the tariff (p. 495) is the Uniform Straight Bill of Lading to be used for such shipments; Section 2 (b) of the Contract Terms and Conditions of the Uniform Straight Bill of Lading contains the Carmack language. As our Public Service Commission has adopted this tariff for intrastate shipments, it follows that the holding in *Outlaw,* supra, should apply to intrastate shipments. Even if it did not apply, failure to file a claim in writing within nine months from date of delivery or the date damage occurred would bar recovery under the express

terms of the contract (bill of lading).

2. The shipper further contends that the railroad, having made a motion for summary judgment which was denied, was estopped from again seeking summary judgment which was granted. Code Ann. § 81A-156 (b) provides, in pertinent part, that "a party against whom a claim, counterclaim, or cross-claim is asserted . . . may, at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof." There is nothing in the statute limiting the number of times a party may make a motion for summary judgment. This court has held "[t]hat the prior denial of summary judgment did not foreclose the subsequent grant of summary judgment is manifest in the statutory dictate that an 'order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.' CPA § 54 (b) (Code Ann. § 81A-154 (b))." *Fierer v. Ashe,* 147 Ga. App. 446 (249 SE2d 270) (1978).

Denial of a motion for summary judgment decides nothing except that under the evidence before the court at that time there can be rendered no judgment as a matter of law. The previous denial of summary judgment does not preclude a subsequent granting thereof on the basis of an expanded record. *Ellington v. Tolar Const. Co.,* 142 Ga. App. 218, 221 (235 SE2d 729) (1977).

*Judgment affirmed. Banke, Acting P. J., concurs. Carley, J., concurs specially.*

ARGUED MARCH 6, 1979 — DECIDED JUNE 5, 1979.

*H. Dale Thompson,* for appellant.
*Jones, Cork, Miller & Benton, Wallace Miller, III, Rufus D. Sams, III,* for appellee.

CARLEY, Judge, concurring specially.

I concur fully in the affirming of summary judgment and in Division 2 of the majority opinion. However, I do not agree with the emphasis placed by the majority on the provisions of the Carmack Amendment to the Interstate Commerce Act, 49 USCA § 20 (11), as recognized in

*Outlaw v. Transit Homes, Inc.,* 145 Ga. App. 695, 697 (244 SE2d 633) (1978). As shown on the face of the opinion, the shipment herein involved was intrastate between Dublin and Bainbridge, Georgia. Because the shipment was intrastate, the carrier's liability must be determined in accordance with the applicable state law as opposed to the provisions of the Carmack Amendment. Goliger Trading Co. v. Chicago & N. W. R. Co., 184 F2d 876 (4) (7th Cir. 1950).

My belief as to the inapplicability of federal law in this case is not diminished by the majority's conclusion that "[t]he Georgia Public Service Commission has adopted Uniform Freight Classification 13, ICC 9, July 11, 1978 as the tariff to be followed on intrastate shipments by railroad common carriers in Georgia." In this connection, no rule, regulation or order of the Public Service Commission was introduced into evidence in the court below. It follows that we cannot consider the action of the Georgia Public Service Commission unless the same can be judicially noticed.

Prior to the adoption of the Administrative Procedure Act of 1964, the courts could not take judicial notice of actions of administrative agencies. *Clements v. Seaboard A. L. R. Co.,* 158 Ga. 764 (124 SE 516) (1924); *Turner v. Brunswick Distributing Co.,* 95 Ga. App. 651 (98 SE2d 591) (1957); *Davis v. General Gas Corp.,* 106 Ga. App. 317 (126 SE2d 820) (1962). The Administrative Procedure Act provided that "[t]he courts shall take judicial notice of any rule which has become effective pursuant to the provisions of this Chapter." Ga. L. 1964, pp. 338, 346 (Code Ann. § 3A-108). A subsequent amendment placed the Public Service Commission under the Administrative Procedure Act as of January 1, 1976. Ga. L. 1975, pp. 404, 407. However, until January 1, 1976, the Public Service Commission was among those agencies to which the provisions of the Administrative Procedure Act were not applicable. Ga. L. 1964, pp. 338, 340; 1965, pp. 283-286; (Code Ann. § 3A-102 (a)). Therefore, any "rule" of the Public Service Commission which existed in May of 1973—when the bill of lading in this case was issued—would not have ". . . become effective pursuant to the provisions of . . ." the Administrative Procedure Act.

Furthermore, the 1975 legislative enactment subjecting the Public Service Commission to the Administrative Procedure Act also provided: "Section 9. Nothing contained within this Act shall apply to any rate, charge, classification, service, hearing, procedure or matter which shall pertain to any motor contract carrier, motor common carrier or railroad." Ga. L. 1975, pp. 404, 411.

Accordingly, the deficiencies of the record in this case cannot be supplied by exercise of judicial notice.

Nevertheless, the trial court was correct in granting summary judgment in view of the undisputed failure of the appellant to file a written claim within 9 months because this court and the Supreme Court have held that compliance with such a provision in a bill of lading is condition precedent to recovery. These cases include decisions cited by this court in *Outlaw,* i.e., *Southern R. Co. v. Simpson,* 20 Ga. App. 290 (1) (93 SE 47) (1917); *Henderson v. Nat. Carloading Corp.,* 93 Ga. App. 716 (2) (92 SE2d 593) (1956). However, as stated, this court in *Outlaw* relied primarily on the Carmack Amendment. Such reliance was fully justified in that case because of the interstate nature of the transaction forming the subject of the litigation therein involved. Since the shipment in this case was between two cities in Georgia, *Outlaw* is distinguishable and federal law is inapplicable; but the same result is required under the law of this state. See also *Southern R. Co. v. Bunch,* 27 Ga. App. 689 (109 SE 523) (1921), and *Post & Woodruff v. Atlantic C. L. R. Co.,* 138 Ga. 763 (3) (76 SE 45) (1912).

For the above reasons, I would affirm the grant of summary judgment on the basis of controlling Georgia authorities.